UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GISELLE HARRISON,

                Plaintiff,

             - against -

SUNY DOWNSTATE MEDICAL CENTER; and
ANTHONY PARKER, as a Manager for SUNY
Downstate Medical Center,

                Defendants.
----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
16-CV-1101 (RRM) (CLP)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Giselle Harrison commenced this action against her former employer, the State University of New York Downstate Medical Center ("SUNY"), and one of her managers, Anthony Parker.[1] Harrison's amended complaint alleges gender and disability discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* ("Rehabilitation Act"); the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, *et seq.* ("NYCHRL").[2] (Am. Compl. (Doc. No 19).) Before the Court is defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12b(6) for failure to state a claim. (Mot. Dismiss (Doc. No. 28).) For the reasons set forth herein, defendants' motion is granted in part and denied in part.

---

[1] SUNY Downstate Medical Center is not a legally cognizable entity separate from SUNY, the appropriate institutional defendant. *See* N.Y. Educ. Law §§ 351 and 352; *Daniel v. American Bd. of Emergency Medicine*, 988 F. Supp. 127, 175 (W.D.N.Y. 1997).

[2] Harrison withdrew certain claims after the amended complaint was filed, and the remaining federal claims are now being asserted only against SUNY, and the state and local law claims are now being asserted only against Mr. Parker. (*See* August 22, 2016 Ltr. (Doc. No. 23).)

## BACKGROUND

Harrison began working at SUNY in 2002 as a personnel associate in the human resources department.[3] (Am. Compl. at ¶ 15) Harrison fell ill on Saturday, December 27, 2014, and still felt sick when she was next to report to work on Monday, December 29, 2014. (*Id.* at ¶¶ 15, 18–20.) That same Monday, Harrison informed her supervisor, Parker, that she could not report to work. (*Id.* ¶¶ at 20–23.) Instead, Harrison went to see a doctor, who provided a note indicating that she would not be able to report to work until January 5, 2015. (*Id.* at ¶ 22.) On January 23, 2015, Harrison met with Parker, who requested additional medical documentation to support her absence. (*Id.* at ¶¶ 30–31.) Parker informed Harrison that the doctor's note was insufficient, because it stated only, without providing any medical facts, the duration for which she was required to be absent from work. (*Id.* at ¶ 37–38.)

On January 29, 2015, Harrison then provided a second doctor's note. (*Id.* at ¶¶ 39–41.) However, in substance, the new note did not differ from the first, and provided no specific medical facts. (*Id.*) On that basis, Parker again advised Harrison that the doctor's notes were insufficient. (*Id* at ¶ 41.) He advised Harrison that she could submit any supplementary medical materials to SUNY's Confidentiality Officer, in lieu of her supervisor. (*Id.*) Instead, Harrison obtained documentation from the SUNY Student-Employee Health Service indicating that the Service had seen the doctor's notes and cleared her to return to work. (*Id.*)

One February 3, 2015, Harrison and Parker met to discuss the adequacy of her doctor's notes. (*Id.* at ¶ 47.) Parker reiterated that the notes lacked sufficient medical substantiation, and Harrison indicated that to provide any additional information would violate her right to medical privacy. (*Id.* at 47–50.) She further alleges that Parker demanded that Harrison waive her rights

---

[3] Unless otherwise noted, the following facts are taken from the amended complaint and considered true for purposes of this Memorandum and Order.

to confidentiality by signing a medical release. (*Id.* at ¶¶ 51, 53.) At that point, Harrison alleges, Parker began behaving in a loud and belligerent manner by yelling, "gesturing erratically," and "banging his hand on the desk." (*Id.* at ¶¶ 51–57.) After taking a short break to allow both parties to calm down, Parker reaffirmed his intention to deny Harrison's sick leave request. (*Id.* at 63, 65, 68.) The same day, Harrison memorialized her complaints to the SUNY Labor relations office. (*Id.* at ¶ 69.) Harrison claims that this was not an isolated incident. She claims that on one occasion, Parker became so visibly agitated by her that he needed to be physically restrained to avoid a violent confrontation. (*Id.* at ¶¶ 76, 81.)

In addition, Harrison alleges that Parker has demanded that several other female employees, whom she names in the amended complaint, provide supplemental medical information to support absences from work, but does not make such demands of male employees. (*Id.* at ¶¶ 31–35.) Harrison further avers that Parker verbally disparaged female employees, but treated male employees with respect. (*See, e.g., id.* at ¶¶ 36, 61, 62, 77–78.)

Harrison alleges that she raised complaints to SUNY on multiple occasions regarding Parker's denial of medical leave and general hostility. (*Id.* at ¶¶ 69, 72, 73, 82, 85). She asserts that on February 9, 2015, Sharon Chambliss-Alvarez, the Interim Vice President of Human Resources, told Harrison that she was causing problems by making her complaints and was being terminated from her employment. (*Id.* at ¶¶ 87–90.)

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to withstand a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). The Court assumes the truth of the facts alleged, and draws all reasonable inferences in the nonmovant's favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Although all factual allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal* 556 U.S. at 678.

## DISCUSSION

### I. Disability Discrimination

Harrison alleges that SUNY subjected her to unlawful medical inquiries, and discriminated against her based on her perceived disability in contravention of the Rehabilitation Act. Harrison also alleges disability discrimination against Parker under the NYSHRL and NYCHRL. For the reasons that follow, SUNY's motion to dismiss is granted, except with respect to Harrison's improper medical inquiry claim.

#### A. Improper Medical Inquiry

Courts in this circuit routinely rely on jurisprudence under the Americans with Disabilities Act ("ADA") to inform their analysis under the Rehabilitation Act. *Sosa v. New York State Div. of Human Rights*, No. 11-CV-5155 (NGG), 2015 U.S. Dist. LEXIS 118507 at, *13 (E.D.N.Y. Sept. 3, 2015). The Rehabilitation Act incorporates many of the employment discrimination provisions of Title I of the ADA, including the prohibition against certain medical inquiries in 42 USCS § 12112(d)(4)(A). That section, entitled "Prohibited examinations and inquiries," provides:

4

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 USCS § 12112(d)(4)(A). A plaintiff "need not prove that he or she has a disability unknown to his or her employer in order to challenge a medical inquiry or examination" under this provision. *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 95 (2d Cir. 2003).

Here, Harrison alleges that she was cleared to return to work by both her personal doctor and SUNY's Employee Health Unit. Though she provided multiple forms of documentation to that effect, Harrison claims that Parker made further inquiries into her specific diagnosis and prognosis. (*See* Am. Compl. at ¶¶ 37–38, 41, 47–50.) Given that "requiring a general diagnosis is sufficient to trigger" the protections of § 12112(d)(4)(A), Harrison has properly alleged a prohibited medical inquiry claim under the Rehabilitation Act. *Conroy*, 333 F.3d at 95.

In their motion to dismiss, SUNY and Parker argue that even if the inquiries give rise to a claim pursuant to § 12112(d)(4)(A), they fall under the "business necessity exception," an affirmative defense that permits further inquiry under certain circumstances. To invoke the business necessity exception, an employer must "show more than that its inquiry is consistent with mere expediency." *Conroy*, 333 F.3d at 95. Rather, the employer must show 1) that the asserted business necessity is vital to the business, for example, ensuring that the workplace is safe and secure and cutting down on egregious absenteeism; 2) the inquiry genuinely serves the asserted business necessity; and 3) that the request is no broader or more intrusive than necessary. *Conroy*, 333 F.3d at 97-98. "[An] affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998), *cert. denied*, 525 U.S. 1103 (1999))

5

SUNY argues that the inquiries made to Harrison fall within the business necessity exception because the inquiries were meant to ensure "that the workplace is safe and secure" and to cut down on "egregious absenteeism" around the holidays. (Mot. Dismiss at 11.) However, these conclusory allegations, and the naked fact that Harrison's absence occurred during the holiday season, are the only factors on which SUNY relies in support of the exception. While SUNY has an interest in cutting down on what they term "egregious absenteeism" around the holidays, SUNY points to nothing in the amended complaint or elsewhere to suggest, for example, that Harrison had attendance issues or had previously abused her leave, or that she was unable to perform the duties of her job having been cleared to return to work by her own doctor and the employee health unit. Nor does SUNY, at this stage, provide any basis to assess why the inquiries were no broader than necessary or a "reasonably effective method of achieving the employer's goal." *Conroy*, 333 F.3d at 98. Given that "the business necessity standard is quite high," *Id*. at 97 (quoting *Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir. 2001), SUNY's arguments fail at this stage of the litigation. Indeed,

the defense of business necessity to an improper medical inquiry is often resolved at summary judgment. *See, e.g., Conroy*, 333 F.3d 88 (deciding application of business necessity exception at summary judgment); *Margherita v. FedEx Express*, 511 Fed. Appx. 71 (2d Cir. 2013) (same); *Grassel v. Dep't of Educ. of N.Y.*, No. 12-CV-1016 (PKC), 2017 U.S. Dist. LEXIS 39683 (E.D.N.Y. Mar. 20, 2017) (same); *Donofrio v. N.Y. Times*, No. 99-CV-1576 (RCC) (JCF), 2001 U.S. Dist. LEXIS 13788 (S.D.N.Y. Aug. 24, 2001) (same); *Lent v. Goldman Sachs & Co.*, No. 97-CV-9413 (SAS), 1998 U.S. Dist. LEXIS 20371 (S.D.N.Y. Dec. 29, 1998) (same). Accordingly, the motion to dismiss Harrison's improper medical inquiry claim is denied.

## B. Discrimination Based on Perceived Disability

"Disability discrimination claims under the NYSHRL are analytically identical to those under the Rehabilitation Act." *See Nelson v. City of New York*, No. 11-CV-2732 (JPO), 2013 U.S. Dist. LEXIS 117742, at *17–*18 (S.D.N.Y. Aug. 19, 2013) (citing *Gingold v. Bon Secours Charity Health Sys.*, 768 F. Supp. 2d 537, 543 n.6 (S.D.N.Y. 2011)). The Rehabilitation Act provides, in relevant part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a). A prima facie case under the Rehabilitation Act requires a plaintiff to show that: "(1) he is handicapped or disabled under the Act; (2) he is otherwise qualified to perform his job; (3) he suffered an adverse employment action solely due to his disability; and (4) the employer is a recipient of Federal financial assistance." *Gentile v. Potter*, 509 F. Supp. 2d 221, 235 (E.D.N.Y. 2007); *see also Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). The NYCHRL has a broader definition of "disability" than either the NYSHRL or the Rehabilitation Act, *see Thomson v. Odyssey House*, 2015 U.S. Dist. LEXIS 125887, at *54 (E.D.N.Y. Sept. 21, 2015), but still requires a plaintiff to plead "actual or perceived" disability, N.Y.C. Admin. Code§ 8-107(1).

Here, Harrison alleges that SUNY discriminated against her based on her disability or perceived disability. However, Harrison fails to plead either that she had a disability, or any facts suggesting that SUNY or Parker discriminated against her based on their perceiving that she had a disability. Rather, she alleges, for example, that "Parker was adamant that [she] provide him with further documentation disclosing the exact nature of her medical issue, including the diagnosis and progress." (Amend. Compl. at ¶ 37.) If anything, Harrison pleads

facts suggesting that Parker did not believe that she was disabled. As such, Harrison cannot "find her way under the aegis of the disability statutes by claiming that defendants 'regarded' her as disabled, because [she] alleges the opposite – namely, that [Parker] doubted that her injuries were more than 'minor' and that [she] was home relaxing." *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 409 (E.D.N.Y. June 1, 2010). Accordingly, because Harrison fails to adequately plead that she was either disabled or perceived to be disabled, her disability discrimination claims under the Rehabilitation Act, NYSHRL, and NYCHRL are dismissed.

**II.     Gender Discrimination**

Harrison alleges gender discrimination claims under Title VII against SUNY, and under NYSHRL and NYCHRL against Parker. "Claims of discrimination under the NYSHRL are analyzed under the same standard as a Title VII claim." *Vargas v. Morgan Stanley*, 438 F. App'x 7, 9 (2d Cir. 2011); *accord Brown*, 756 F.3d at 226 ("The NYSHRL mirrors these federal obligations."). In turn, "Title VII makes it unlawful for an employer 'to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment'" based on, *inter alia*, gender. *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 225–226 (2d Cir. 2014) (quoting 42 U.S.C. § 2000e-2(a)(1)). To allege gender discrimination under Title VII, Harrison must show that: "(1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] held; (3) [she] suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination." *Johnson v. Long Island Univ.*, No. 13-CV-2464 (JS), 2014 U.S. Dist. LEXIS 140944, at *5 (E.D.N.Y. Sept. 30, 2014) (citing *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012)). However, to survive a motion to dismiss, Harrison need only plead that "(1)

the employer discriminated against [her] (2) because of [her] race, color, religion, sex, or national origin." *Vega*, 801 F.3d at 84–85.

Here, Harrison has failed to plead facts sufficient to show that her employer discriminated against her because of her gender. Harrison attempts to raise an inference of discriminatory intent by alleging "preferential treatment given to similarly situated individuals." *Perry v. State of N.Y. Dep't of Labor*, 08-CV-4610 (PKC), 2009 U.S. Dist. LEXIS 74006, at *2 (S.D.N.Y. Aug. 20, 2009), *aff'd*, 398 F. App'x 628 (2d Cir. 2010). However, in order to plausibly allege discrimination on that basis, the comparators must be "similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). In this case, Harrison alleges that: (1) Harrison told her on "numerous occasions" that "as a woman she could not have it all," (Am. Compl. at ¶ 36); (2) "Parker was hostile and discriminatory towards Plaintiff, in part, because she is a woman," (*id.* at ¶ 58); and (3) Parker is respectful of male employees and does not try to intimidate them, (*id.* at ¶¶ 62, 78). In addition, Harrison identified other women who were required to produce documentation identifying their diagnoses and prognoses after taking sick days, "whereas male employees [were] not subjected to such treatment." (*Id.* at ¶¶ 32–35).

Harrison fails to allege that these male employees were similarly situated to her in "all material respects." *Shumway*, 118 F.3d at 64. Harrison fails to allege that any particular male employee in her department was not required to submit diagnostic information after taking sick leave. Nor does Harrison allege that any male employee of comparable experience refused to provide such diagnostic information and was not fired. Having failed to allege that similarly situated employees outside of her protected class received preferential treatment, Harrison has failed to raise an inference of discriminatory intent. *C.f. O'Toole v. Cty. of Orange*, No. 16-CV-

9

2059 (NSR), 2017 U.S. Dist. LEXIS 83618 (S.D.N.Y. May 31, 2017) (finding that where plaintiff alleged that male employees under similar circumstances with similar levels of experience to her were ultimately retained when she was fired, "her assertions of differential treatment permit a plausible inference of gender discrimination. The Court notes, however, that while Plaintiff's sex discrimination allegations meet the [*de minimis*] burden at this stage, the facts – as alleged – appear to sound more strongly as a hostile work discrimination claim than a gender discrimination one.")

Harrison's "subjective belief of gender discrimination is not sufficient to support the inference that defendants discriminated against her based on her gender." *Szewczyk v. City of New York*, No. 15-CV-918 (MKB), 2016 U.S. Dist. LEXIS 91856, at *21 (E.D.N.Y. July 14, 2016); *see also Meyer v. New York Office of Mental Health*, 174 F. Supp. 3d 673, __, 2016 U.S. Dist. LEXIS 40213, at *12 (E.D.N.Y. 2016) ("Plaintiff's mere subjective belief that [s]he was discriminated against . . . does not sustain a . . . discrimination claim.") (citation and internal quotation marks omitted). Conclusory allegations alone are insufficient to survive a motion to dismiss. Accordingly, Harrison's Title VII and NYSHRL gender discrimination claims are dismissed.

With respect to NYCHRL, this claim must be assessed "separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). That is, "'courts [must] be sensitive to the distinctive language, purposes, and method of analysis required by the [NYCHRL], requiring an analysis more stringent than that called for under either Title VII or the [NYSHRL].'" *Vargas v. Morgan Stanley*, 438 F. App'x 7, 9 (2d Cir. 2011) (quoting *Williams v. N.Y.C. Housing Auth.*, 872 N.Y.S.2d 27, 30–31 (1st Dep't 2009); *accord Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d

268, 278 (2d Cir. 2009). Under the NYCHRL a "plaintiff need only show differential treatment – that she is treated 'less well' – because of a discriminatory intent." *Mihalik*, 715 F.3d at 109. However, as noted above, Harrison has failed to allege in a non-conclusory fashion that she was treated differently than any similarly situated male employee. *See Bell v. McRoberts Protective Agency*, No. 15-CV-0963 (JPO), 2016 U.S. Dist. LEXIS 54875, at *11 (S.D.N.Y. Apr. 25, 2016) ("claims must be more than conclusory or speculative to survive a motion to dismiss"); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 250, 252–53 (E.D.N.Y. 2015). Accordingly, Harrison's NYCHRL gender discrimination claim is dismissed.

### III. Interference

Section 8-107(19) of the NYCHRL prohibits "any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the enjoyment of . . . any right granted or protected pursuant to this section." N.Y. City Admin. Code § 8-107(19). That is, Section 8-107(19) "makes actionable intimidation, threats or interference with . . . a person's exercise or enjoyment of rights protected under § 8-107. *Guan N. v. New York City Dep't of Educ.*, No. 11-CV-4299 (AJN), 2013 U.S. Dist. LEXIS 102988, at *23 (S.D.N.Y. July 23, 2013). "Threats are required to state a claim for violation of Admin Code § 8-107(19)." *Sletten v. LiquidHub, Inc.*, No. 13-CV-1146 (NRB), 2014 WL 3388866, at *5 (S.D.N.Y. July 11, 2014) (internal quotation marks omitted).

SUNY argues that Harrison has failed to allege that Parker ever threatened her. (Mot. Dismiss at 15.) However, even assuming that Parker made such a threat, he did not do so to "interfere with . . . any right guaranteed by" NYCHRL § 8-107. As noted above, Harrison has failed to state a claim of discrimination under NYCHRL § 8-107. Given that Harrison has failed to assert any rights protected under § 8-107, she cannot then assert that Parker's threats interfered

11

with her exercise of those rights. *See Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51 (S.D.N.Y. Feb. 26, 2016) (finding that defendant's threats "in response to Plaintiff's unfounded accusations are therefore not enough to save Plaintiff's claim under Section 8-107(19) – at least not without some evidence suggesting that those threats were made 'to coerce, intimidate, threaten or interfere' with Plaintiff's exercise of a protected right"). Accordingly, Harrison's interference claim under NYCHRL is dismissed.

## IV. Retaliation

Harrison alleges unlawful retaliation claims pursuant to Title VII, the NYSHRL, the NYCHRL, and the Rehabilitation Act. For the following reasons, the motion to dismiss is granted as to Harrison's Title VII, NYSHRL, and NYCHRL retaliation claims, and denied as to the Rehabilitation Act claims.

### A. Title VII, NYSHRL, and NYCHRL

"The standards for evaluating . . . retaliation claims are identical under Title VII and the NYSHRL." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10 (2d Cir. 2013). In turn, the "same analysis used for retaliation claims under Title VII applies to retaliation claims under the NYCHRL" except that "there is no requirement that the employee suffer a materially adverse action." *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539 (S.D.N.Y. Aug. 27, 2012) (internal quotation marks omitted); *accord Lennert-Gonzalez v. Delta Airlines, Inc.*, 2013 U.S. Dist. LEXIS 27832 (S.D.N.Y. Feb. 28, 2013). Title VII makes it unlawful "for an employer to discriminate against any . . . employee[] . . . because [that individual] opposed any practice" made unlawful by Title VII. 42 U.S.C. § 2000e-3(a).

Title VII Retaliation claims are analyzed under the *McDonnell-Douglas* burden-shifting framework. *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). To satisfy her initial burden,

Harrison must allege: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* at 164. With respect to the "protected activity" prong, it is unlawful "for an employer to retaliate against an individual because she opposed any practice made unlawful by Title VII . . . [or] to retaliate against an individual because she made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (internal quotation marks omitted).

Here, Harrison alleges that she was retaliated against in violation of Title VII when she was fired for complaining that Parker discriminated against her based on her gender. However, Harrison fails to plead any facts that suggest that her complaints to SUNY were about her gender, rather than general workplace hostility. For example, Harrison alleges that:

> Plaintiff went to the Defendant's Labor Relations office in tears to complain about what took place and Defendant Parker's hostile, intimidating, and threatening behavior directed at the Plaintiff. The Plaintiff then submitted a written complaint to Leonzo Cuiman, Assistant Vice President of Labor Relations, complaining that Defendant Parker had threatened to disapprove Plaintiff's leave request that he had previously approved and that he was requiring that Plaintiff submit specific medical documentation identifying her medical documentation identifying her medical condition in violation of Plaintiff's rights.

(Am. Compl. at ¶ 69.) Harrison further alleges that she complained in a meeting with human resources "about being required to disclose private medical information after her medical leave request had been approved," and about having her pay docked. (*Id.* at ¶¶ 72–73.) Harrison also alleges that she wrote to the Director of Labor Relations "complaining about Defendant Parker's aggressive, threatening, and discriminatory treatment towards her." (Am. Compl. at ¶ 82.) While Harrison alleges that Parker's "hostile and threatening behavior was directed at [her] as a result of her gender," nowhere

13

does she allege that she informed anyone at SUNY prior to her termination that she suspected that Parker's hostility was gender-related. (Am. Compl. at ¶ 78.)

As noted above, Harrison's "subjective belief of gender discrimination is not sufficient to support the inference that Defendants discriminated against her based on her gender." *Szewczyk*, 2016 U.S. Dist. LEXIS 91856, at *21. Even if Harrison believed that she was being discriminated against because of her gender, "nothing in her behavior, as described in her complaint, would have allowed her employer to 'reasonably have understood[] that [Harrison's] opposition was directed at conduct prohibited by Title VII.'" *Kelly*, 716 F.3d at 17 (quoting *Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998); *see also Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 594 (2d Cir. 1988) (plaintiff's complaints "neither pointed out discrimination against particular individuals nor discriminatory practices"); *Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc.*, 724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010) (dismissing retaliation claim when the plaintiff's allegations show "that while she did complain about certain problems she was having at work, she did not complain that she was being discriminated against on account of her sex"); *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 521 (S.D.N.Y 2010).

Had Harrison "complained, or even suggested, that she was being discriminated against because of her sex (or some other trait), we would have a different case." *Kelly*, 716 F.3d at 17. However, by itself, "[p]ersonal animus . . . is insufficient to establish a claim under Title VII, the NYSHRL, or the NYCHRL." *Lennert-Gonzalez v. Delta Airlines, Inc.*, No. 11-CV-1459 (JMF), 2013 U.S. Dist. LEXIS 27832, at *8 (S.D.N.Y. Feb. 28, 2013). Accordingly, Harrison's Title VII, NYSHRL, and NYCHRL retaliation claims are dismissed.

### B. Rehabilitation Act

In order to properly plead a retaliation claim under the Rehabilitation Act, Harrison must allege that: "(i) [she] was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (internal quotation marks and citations omitted). Harrison need not allege that she was disabled within the meaning of the Act to sustain a retaliation claim. *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394 (E.D.N.Y. 2010)

In their motion to dismiss, SUNY and Parker argue that Harrison cannot bring a claim under the Rehabilitation Act because she did not engage in a "protected activity." (*See* Mot. Dismiss at 14.) The Rehabilitation Act "protects individuals who oppose any practice that the Rehabilitation Act makes illegal." *Collins v. City of New York*, 156 F. Supp. 3d 448 (S.D.N.Y. Jan. 11, 2016) (citing 29 C.F.R. § 1614.101(b)). As noted above, Harrison has properly plead a claim under the Rehabilitation Act based on SUNY's allegedly improper medical inquiry. (*See* Am. Compl. at ¶¶ 37–38, 41, 47–50.) Specifically, Harrison alleges that she complained to SUNY about the allegedly improper medical inquiries, and then was fired for making those complaints. (*Id.* at ¶¶ 87–90.) In other words, Harrison has alleged that she engaged in the protected activity of opposing SUNY's improper medical inquires. Accordingly, the motion to dismiss Harrison's retaliation claim under the Rehabilitation Act is denied.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss (Doc. No. 28) is denied with respect to Harrison's eighth and ninth causes of action for retaliation and improper medical

inquiries pursuant to the Rehabilitation Act, and granted as to all other claims, including all claims brought against defendant Parker.

This action is committed to the assigned Magistrate Judge for all pre-trial proceedings.

SO ORDERED.

Dated: Brooklyn, New York
       September 25, 2017

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge